UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JACQULINE MAE GORDON,<br><br>   Plaintiff,<br>  v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,<br><br>   Defendant. | No.  EDCV 13-2047 AJW<br><br><br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts, which are undisputed, are summarized in the Joint Stipulation.  [See JS 2]. In a written hearing decision that constitutes the Commissioner's final decision in this case, an administrative law judge (the "ALJ") found that plaintiff had severe impairments consisting of panic and anxiety disorder with intermittent agoraphobia. [Administrative Record ("AR") 13; see JS 2].  The ALJ found that plaintiff's impairments resulted in nonexertional limitations that precluded her from performing her past relevant work, but that she retained the residual functional capacity ("RFC") to perform jobs available in significant numbers in the national economy. [AR

20-21]. Accordingly, the ALJ concluded that plaintiff was not disabled at any time through the date of the ALJ's decision. [AR 21].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Treating physician's opinion**

Plaintiff contends that the ALJ erred in evaluating the opinion of her treating physician Evan George Tzakis, M.D. at Kaiser Permanente's Canyon Crest Behavioral Medical Unit. [See JS 3-16].

The ALJ noted that plaintiff began treatment with Dr. Tzakis in April 2009 for impaired concentration, anxiety, panic attacks, and inability to leave the house. [AR 17]. Dr. Tzakis's treatment notes indicate that he completed "Documentation of Medical Impairment" forms concluding that plaintiff was unable to work from April 28, 2009 through November 11, 2009 due to panic disorder with agoraphobia and depression. [See AR 18, 340, 351, 404, 411]. The ALJ rejected Dr. Tzaki's opinion that plaintiff was disabled in favor of the opinion of the consultative psychiatric examiner, Dr. Bagner, and the nonexamining state agency physicians. [AR 17-19].

1 The ALJ found that plaintiff retained the RFC to perform work at all exertional levels, with the
2 following nonexertional limitations: she would be able to sustain concentration, persistence and
3 pace, in at least two hour blocks of time to complete a normal workday, but she would be off task
4 about 10% of the workday due to interference from psychologically based symptoms. She would
5 be able to remember and carry out both complex and detailed tasks and respond appropriately to
6 coworkers and supervisors, but she would need to work in a nonpublic work environment not
7 involving fast-paced production requirements or assembly line work such as that involving a
8 conveyor belt. [AR 14-15].

9 In general, "[t]he opinions of treating doctors should be given more weight than the
10 opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.
11 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242
12 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than
13 those of examining or non-examining physicians because "treating physicians are employed to
14 cure and thus have a greater opportunity to know and observe the patient as an individual . . . ."
15 Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d
16 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188);
17 see 20 C.F.R. §§ 404.1502, 404.1527(d)(2), 416.902, 416.927(d)(2).

18 If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing
19 reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that
20 of another doctor, a treating or examining source opinion may be rejected for specific and
21 legitimate reasons that are based on substantial evidence in the record. Orn, 495 F.3d at 632;
22 Tonapetyan, 242 F.3d at 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th
23 Cir. 1995).

24 The ALJ's stated reasons for rejecting Dr. Tzakis's controverted treating source opinion
25 were not specific, legitimate, and supported by substantial evidence in the record. First, the ALJ
26 noted that the "Documentation of Medical Impairment" ("DMI") forms were mentioned in the
27 treatment notes but were not included in the record. The omission of the DMI forms from the
28 record, without more, is not a legitimate reason for rejecting Dr. Tzakis's disability opinions.

1      Included in the record before the ALJ were Dr. Tzakis's well-organized, detailed electronic
2  treatment reports for the period from April 2009 through October 2010. [AR 283-415]. Dr.
3  Tzakis's treatment reports include plaintiff's reported symptoms, her response to medications and
4  other treatment, mental status examination results, Dr. Tzakis's diagnoses (panic disorder with
5  agoraphobia and depression) and assessment, his treatment plan, and notes from other clinicians
6  who participated in plaintiff's care either in tandem with Dr. Tzakis or under his supervision, such
7  as registered nurses and psychiatric social workers. [See AR 282-413]. Also included in the
8  treatment reports are Dr. Tzakis's narrative statements that plaintiff was disabled or unable to
9  work and references to giving plaintiff DMI forms reflecting that assessment. [See, e.g., AR 334
10 ("Plaintiff remains disabled with panic and agoraphobia. Documentation of Medical Impairment
11 form given."); AR 340 ("Agoraphobia remains disabling. Documentation of Medical Impairment
12 Form given."); AR 386 ("Documentation of Medical Impairment form with no work til May 3,
13 then restricted to 4 hours workdays until May 10."); AR 404 (noting that Dr. Tzakis issued a
14 Documentation of Medical Impairment form until plaintiff's planned May 29, 2009 office visit
15 which authorized her to be "[o]ff work" until that date); AR 411 ("Condition has worsened.
16 Patient remains disabled. Documentation of Medical Impairment form given until next visit June
17 26, but with comment that plaintiff is expected to be disabled until September.")]. Plaintiff also
18 submitted additional treatment reports from Dr. Tzakis to the Appeals Council. [See AR 4, 414-
19 422]. The absence of the DMI forms from the record did not prevent the ALJ from discerning
20 or evaluating the evidentiary basis for Dr. Tzakis's disability opinions because both his opinion,
21 and the clinical evidence on which he relied, were contained in the treatment reports.

22      Second, the ALJ drew negative inferences about Dr. Tzakis's motivation and the
23 evidentiary basis for his disability opinion that were not warranted by the record. After noting that
24 the DMI forms are not part of the record, the ALJ remarked:

25      The possibility always exists that a doctor may express an opinion in an effort to
26      assist a patient with whom he or she sympathizes for one reason or another.
27      Another reality . . . is that patients can be quite insistent and demanding in seeking
28      supportive notes or reports from their physicians, who might provide such notes

> in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence in the record, as in the current case.

[AR 18].

An ALJ may not reject a medical opinion that is favorable to the claimant merely because the ALJ suspects that the doctor is sympathetic to the claimant or the claimant solicited the doctor's opinion. See Reddick v. Chater, 157 F.3d 715, 727 (9th Cir. 1998) ("[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report. Evidence of the circumstances under which the report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report."); Lester, 81 F.3d at 832 ( "The [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits," but may "introduce evidence of actual improprieties" in physicians' opinions); Petty v. Astrue, 550 F. Supp. 2d 1099 (holding that the ALJ's conclusion that a treating physician was "sympathetic to the claimant and is trying to help her obtain disability" was not a clear and convincing reason for rejecting that doctor's opinion, and observing that "there is nothing remarkable about the fact that a doctor advocates his patient's cause") (citing McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002) ("[A]n ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician.")).

The ALJ relied on three factors support her assertion that Dr. Tzakis's opinion "departs substantially from the rest of the evidence in the record" and therefore suggested an improper motive on Dr. Tzakis's part. The first factor was that "[t]he course of treatment pursued by [Dr. Tzakis] has not been consistent with what one would expect if the claimant were truly disabled, as the doctor has reported." [AR 18]. The treatment notes submitted to the ALJ establish that Dr. Tzakis saw plaintiff for monthly or bi-monthly office visits from April 2009 through December 2010. [AR 283-413]. From March 2011 through the date of the April 2012, Dr. Tzakis saw

1  plaintiff for office visits about every three months. [AR 29, 414-422]. In between office visits,
2  plaintiff had frequent phone consultations with Dr. Tzakis or with other clinicians who worked
3  with him. [See AR 283-413]. Dr. Tzakis prescribed trials of multiple medications for plaintiff and
4  frequently changed her medications or dosage in response to her reports about the medications'
5  efficacy and side effects. [See 283-413]. He also referred plaintiff for weekly anxiety group
6  therapy, but only after deciding not to refer her to an "Intensive Outpatient Program" because it
7  was "likely to be a hardship with transportation and childcare." [AR 409-410]. Dr. Tzakis
8  subsequently referred plaintiff for psychotherapy. [AR 293, 300-301, 417].

9        The ALJ cited no evidence in the record, such as the testimony of a medical expert, to
10 support her conclusion that the treatment Dr. Tzakis prescribed for plaintiff's panic disorder,
11 agoraphobia, and depression were inconsistent with his disability opinion. "[A]lthough an ALJ
12 may properly reject a treating physician's opinion that is inconsistent with the physician's
13 prescribed treatment, 'an ALJ may not make speculative inferences from medical reports' and
14 'may not reject a treating physician's opinion' based on 'speculation or lay opinion.'" Toland
15 v.Astrue, 2011 WL 662336, at *5 (C.D. Cal. Feb. 14, 2011) (brackets omitted) (citing Rollins v.
16 Massanari, 261 F.3d 853, 856 (9th Cir. 2001) and quoting Morales v. Apfel, 225 F.3d 310, 317
17 (3d Cir. 2000)); see also Gonzalez Perez v. Sec'y of Health and Human Servs., 812 F.2d 747, 749
18 (1st Cir. 1987) ("The ALJ may not substitute his own layman's opinion for the findings and
19 opinion of a physician."). "Indeed, where a claimant's limitations arise from mental health
20 problems, as in this case, 'the need to rely on medical evidence as opposed to the ALJ's lay
21 opinion appears even greater.'" Toland, 2011 WL 662336, at 85 (quoting Sklenar v. Barnhart,
22 195 F. Supp. 2d 696, 700 (W.D. Pa. 2002) and citing Morales, 225 F.3d at 319 (noting that for a
23 person who suffers from an "affective disorder . . . marked by anxiety, the work environment is
24 completely different from home," and concluding that "[t]he principle that an ALJ should not
25 substitute his lay opinion for the medical opinion of experts is especially profound in a case
26 involving a mental disability")); see Kelley v. Sullivan, 1991 WL 157318, *6 (E.D. Pa. Aug. 8,
27 1991) ("[a]n ALJ may not . . . draw inferences concerning the severity of a plaintiff's impairment
28 based upon the medications prescribed if such inferences derive only from the ALJ's lay opinion")

1   (citation omitted).

2   The second factor cited by the ALJ as evidence of impropriety by Dr. Tzakis was that he
3   "apparently relied quite heavily on the subjective report of subjective limitations provided by the
4   claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported.
5   Yet . . . there exist good reasons for questioning the reliability of the claimant's subjective
6   complaints." [AR 178]. In appropriate circumstances, an ALJ may discredit a treating physicians'
7   opinion because it is based on a claimant's properly discounted subjective complaints. See
8   Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433-34 (9th Cir. 1988) (per curiam)
9   (stating that medical conclusions are entitled to less weight to the extent that they rely on the
10  claimant's properly discounted subjective history). However, the ALJ's conclusion that Dr.
11  Tzakis relied wholly and uncritically on plaintiff's subjective complaints is unsupported by the
12  record. Between April 2009 and May 2012, Dr. Tzakis personally observed and interviewed
13  plaintiff, conducted mental status examinations, and monitored her response to various
14  medications during about sixteen office visits, and he also had numerous phone contacts (or
15  reports of phone contacts by other clinicians) with her during the same period. Plaintiff
16  consistently described symptoms of anxiety, depression, and panic attacks that restricted her
17  ability and willingness to leave the house, or that made remaining outside the house difficult when
18  she did go out. She also described stressors related to marital problems, and eventually, divorce
19  and child custody proceedings. Mental status examination findings included anxious mood and
20  affect, rapid speech, and ruminative thought process. [See AR 283-422].

21  It was not improper for Dr. Tzakis to base his disability opinion on plaintiff's subjective
22  symptoms in conjunction with his clinical observations and mental status examination findings.
23  See Ferrando v. Comm'r of Soc. Sec. Admin., 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011)
24  ("[M]ental health professionals frequently rely on the combination of their observations and the
25  patient's reports of symptoms (as do all doctors) . . . . To allow an ALJ to discredit a mental health
26  professional's opinion solely because it is based to a significant degree on a patient's 'subjective
27  allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire
28  category of psychological disorders."); see also Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th

Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology . . . . ") (quoting Poulin v. Bowen, 817 F.2d 865, 873–874 (D. C. Cir. 1987)). Dr. Tzakis had ample opportunity to evaluate the credibility of plaintiff's subjective symptoms, and he found those symptoms sufficiently credible that in November 2009 he "encouraged [her] to apply for SSI at this time" due to her panic disorder with agoraphobia. Dr. Tzakis's suggestion that plaintiff apply for SSI belies the ALJ's speculation that he merely acquiesced to her demands to placate her. [AR 340]. See Ryan v. Comm'r of Social Sec., 528 F.3d 1194, 1199 (9th Cir. 2008) (holding that the ALJ did not provide clear and convincing reasons for rejecting an examining physician's opinion that the claimant was disabled by depression and anxiety "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. There is nothing in the record to suggest that [the physician] disbelieved [the claimant's] description of her symptoms, or that [the physician] relied on those descriptions more heavily than his own clinical observations in reaching the conclusion that [the claimant] was incapable of maintaining a regular work schedule.") (citing Edlund, 253 F.3d at 1159 ("In sum, the ALJ appears to have relied on her doubt's about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable."); Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1300 (9th Cir.1999) (holding that substantial evidence did not support the ALJ's finding that the examining psychologists improperly took the claimant's "statements at face value" where the psychologists' reports did not contain "any indication that [the claimant] was malingering or deceptive").

The third factor the ALJ relied on to impute an improper motive to Dr. Tzakis was that his opinion was inconsistent with plaintiff's activities of daily living. The ALJ noted that plaintiff described activities that included "driving, going to the park with her son, going to the grocery store, preparing meals, performing household chores, playing online games, visiting family and friends, and going to the movies with her son." [AR 16]. The ALJ also cited plaintiff's ability to

1  care for her son, home school him, and take him to basketball games and practices. [AR 16].

2  Plaintiff's ability to care for and home-school her son and to perform routine daily
3  activities at home or online are not inconsistent with her subjective allegations of panic attacks
4  with agoraphobia. The ALJ apparently assumed that plaintiff's ability to leave the house for such
5  tasks as a weekly trip to the grocery store, trips to the park with her son, or driving him toسpart
6  practices and games were inconsistent with her subjective symptoms, but plaintiff did not tell Dr.
7  Tzakis (or testify) that she was unable to leave the house or care for her son. She reported that she
8  did go out, but that doing so (or even thinking about it) was difficult and could induce severe
9  anxiety or panic [AR 307, 417, 420], that she had trouble going out alone and also relied on
10 medication on outings [296, 321, 411, 419], that being out in public places could, and did, trigger
11 panic attacks [AR 33, 37-38, 321, 416, 419], that she experienced feelings of panic when she was
12 under stress or when she could not escape [AR 38-40, 42, 420], that she was "uncomfortable"
13 taking her son to social activities but "makes herself go," and that focusing on the needs of her son
14 helped her get out of the house. [AR 36, 37, 285, 418]. The ALJ's assumption that plaintiff's daily
15 activities undermine the credibility of Dr. Tzakis's disability opinion is not supported by
16 substantial evidence in the record. See Abad v. Colvin, 2014 WL 19301949, at *7 (W.D. Wash.
17 May 14, 2014) (holding that the ALJ's assertion that the claimant's agoraphobia diagnosis was
18 "inconsistent with [his] demonstrated ability to get out of the house on a regular basis is incorrect"
19 because the Diagnostic & Statistical Manual of Mental Disorders "identifies three criteria that
20 must be met to support a diagnosis of agoraphobia, none of which requires that an individual be
21 unable to leave the house on a regular basis").

22 The ALJ also rejected Dr. Tzakis's disability opinion because there is no evidence that he
23 was familiar with the definition of "disability" in the Social Security Act and governing
24 regulations, and that it was "possible" that Dr. Tzakis was referring solely to plaintiff's inability
25 to perform her past work.

26 Although the ultimate legal conclusion as to whether a claimant is disabled under the
27 Social Security Act is an issue reserved to the Commissioner, the ALJ is still required to consider,
28 and give legally sufficient reasons for rejecting, a treating physician's subjective judgments about

- 9 -

1  a claimant's ability to work. See Reddick, 157 F.3d at 725 (explaining that a physician may render
2  "medical, clinical opinions" or opinions on the ultimate issue of disability, and that the reasons
3  required to rejecting a treating doctor's opinion as to disability are comparable to those required
4  for rejecting a medical opinion); Lester, 81 F.3d at 832-833 ("The Commissioner is required to
5  give weight not only to the treating physician's clinical findings and interpretation of test results,
6  but also to his subjective judgments. . . . The treating physician's continuing relationship with the
7  claimant makes him especially qualified to . . . form an overall conclusion as to functional
8  capacities and limitations, as well as to prescribe or approve the overall course of treatment.").
9  It is possible that when Dr. Tzakis said that plaintiff was disabled, he meant that plaintiff was
10 unable to perform her past work, but since he did not suggest that there was any other work she
11 could perform, that possibility seems unlikely. The ALJ was not entitled to exploit what was at
12 best a slight ambiguity in this respect without making any attempt to clarify the basis for Dr.
13 Tzakis's opinion.
14 The final reason given by the ALJ for rejecting Dr. Tzakis's opinion is that he opined that
15 plaintiff was disabled "for a few months," but not for a continuous period of at least 12 months
16 as required to satisfy the Social Security Act's definition of disability. [AR 19]. Based on the
17 record as a whole, including treatment records submitted to the Appeals Council, Dr. Tzakis
18 unequivocally opined that plaintiff was disabled for more than a continuous 12-month period. [See
19 AR 283-422].
20 The ALJ failed to provide specific, legitimate reasons supported by substantial evidence
21 for rejecting Dr. Tzakis's disability opinion.

**Inconsistency with the DOT**

23 Plaintiff also contends that the ALJ's finding that plaintiff can perform the alternative jobs
24 identified in the ALJ's decision is inconsistent with the ALJ's finding that plaintiff would be "off
25 task" about 10% of the day due to interference from psychologically based symptoms. Plaintiff
26 contends that if she were off task 10% of every workday, that would amount to being off task 48
27 minutes a day, which equates to 4 hours a week, or two days a month. Plaintiff further contends
28 that when the ALJ included that limitation in her hypothetical question to the vocational expert,

the vocational expert testified that the hypothetical person "could be off task 10 percent of the day, which is essentially six minutes," and still perform those jobs. Plaintiff argues that the vocational expert's testimony is not substantial evidence supporting the ALJ's finding because the vocational expert mistakenly interpreted being off task 10% of the day to mean six minutes per day. [See JS 16-20].

Defendant argues that the vocational expert's testimony should be interpreted to mean that the hypothetical person would be off task for six minutes (or 10%) of each hour during the workday. Although the vocational expert did not say "six minutes per hour," it would be unreasonable to infer that she meant six minutes *per day* when she verbalized her understanding that the hypothetical question concerned someone who was "off task 10 percent of the day . . . ." [AR 49]. Accordingly, plaintiff's contention lacks merit.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for

- 11 -

further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

A remand for further administrative proceedings is the appropriate remedy because there are outstanding issues to be resolved, including "the timing and duration of [plaintiff's] disability." Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003); see generally Treichler v. Colvin, — F.3d —, 2014 WL 7332774 (9th Cir. Dec. 24, 2014) (noting that only in "rare circumstances" should a court depart from the "ordinary" rule of remanding for further administrative proceedings).

## Conclusion

For the reasons described above, the Commissioner's decision is **reversed,** and the case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED**

February 17, 2015



ANDREW J. WISTRICH
United States Magistrate Judge